UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GREAT LAKES INSURANCE SE, <br><br> Plaintiff, <br><br> v. <br><br> SUZANNE ROSS, et al., <br><br> Defendants. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br> No. 1:21-CV-17308-KMW-SAK <br><br> **OPINION** |

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

This matter comes before the Court by way of the Motion for Default Judgment of Plaintiff

Great Lakes Insurance SE ("Great Lakes") against Defendants Barry Ross, Suzanne Ross, and

Nathielle Silva Sousa in his capacity as the Administrator ad Prosequendum of the Estate of Jose

Antonio Da Silva (the "Estate Administrator"). For the reasons set forth below, Great Lakes'

Motion for Default Judgment is granted.

## II.    BACKGROUND

### A.  Facts

#### i.  *The State Court Action*

Great Lakes initiated the instant action seeking a declaratory judgment that it has no

obligation to provide insurance coverage to Suzanne and Barry Ross (the "Ross Defendants")

pursuant to an insurance policy. Great Lakes' demand for declaratory judgment is occasioned by

a separate, state court lawsuit (the "State Court Action") brought by the Estate Administrator

1

against the Ross Defendants seeking damages for the injuries and death allegedly caused to Antonio Da Silva (the "Decedent") while he was performing construction work on the Ross Defendants' property (the "Premises"). For this reason, Great Lakes likewise seeks a judgment against the Defendant Administrator declaring that it has no obligation to provide any payment to the Decedent's Estate, to the extent any judgment is ultimately obtained against the Ross Defendants.

The complaint in the State Court Action alleges that on or around December 6, 2020, the Decedent—along with other "general contractors, subcontractors, suppliers, managers and/or electrical entities"—were performing construction work on the Ross Defendants' Premises. *See id.* ¶ 11. The Decedent, while in the process of moving aluminum scaffolding support poles with his co-workers, was electrocuted when one of the poles came into contact with a high-voltage wire. *See id.* ¶ 13. As a result, the Decedent was hospitalized for three months due to severe burns and electrical injuries. *See id.* ¶¶ 14, 16. Plaintiff ultimately died from his injuries on March 3, 2021. *See id.* ¶ 16. Thus, on behalf of the Decedent's Estate, the Defendant Administrator seeks damages and other relief from numerous defendants, including the Ross Defendants, who are alleged to be liable for the Decedent's injuries and death. *See id.* ¶ 17.

### ii.   *The Great Lakes Insurance Policy*

Great Lakes issued an insurance policy to provide coverage of the Premises where the construction was taking place (the "Policy").[1] *See id.* ¶ 18. The Policy ran for a period from October 26, 2020 to October 26, 2021. *See id.* Thus, the Decedent's injuries and death occurred within the policy period. *See id.* ¶¶ 13–16, 18.

---

[1] The Great Lakes Insurance Policy was specifically issued to Defendant Suzanne Ross, and bears the policy number GLUKP16382. *See* Compl. ¶ 18; *see also id.*, Ex. B.

On August 9, 2021, Great Lakes issued a letter to Suzanne Ross in which it denied any obligation to provide coverage for the State Court Action because the Decedent was hired to perform work on the Ross Defendants' Premises as an independent contractor—a scenario Great Lakes maintains is expressly excluded by the Policy's "Independent Contractor Exclusion." (ECF No. 1-3).

## B. Procedural History

Great Lakes filed its Complaint on September 22, 2021, seeking a declaratory judgment concerning its rights and responsibilities under the Policy. (ECF No. 1). On November 23, 2021, Great Lakes filed Waivers of the Service of Summons, which had been executed by counsel for the Ross Defendants. (ECF Nos. 5, 6). This same day, Great Lakes also filed an Affidavit of Service indicating that the Defendant Administrator had been personally served with a copy of the Complaint. (ECF No. 7). Because the Defendants failed to respond to the Complaint within the time prescribed by Fed. R. Civ. P. 12(a)(1)(A), Great Lakes promptly sought and received an entry of default from the Clerk as to each Defendant. (ECF Nos, 10, 12). Great Lakes now submits the instant Motion for Default Judgment declaring that it has (1) no obligation to provide defense and/or indemnity coverage to the Ross Defendants; and (2) no obligation to provide payment that the Defendant Administrator may obtain against the Ross Defendants in the State Court Action. (ECF No. 13 at 1–2).

To date, no attorney has entered an appearance on behalf of any Defendant. Nor has any Defendant filed a pleading or performed any other action otherwise to defend the case.

## III.   STANDARD OF REVIEW

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v.*

*Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). However, before a court may enter default judgment, the clerk must have previously entered default under Fed. R. Civ. P. 55(a). *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). "Once this procedural hurdle has been met, it is within the discretion of the district court whether to grant a motion for a default judgment." *Dellecese v. Assigned Credit Sols., Inc.*, No. 15-6678, 2017 WL 957848, at *1 (D.N.J. Mar. 10, 2017).

## IV.   DISCUSSION

Notwithstanding the broad discretion afforded to this Court under Fed. R. Civ. P. 55(b)(2), default judgment may be entered "only if the plaintiff's factual allegations establish the right to the requested relief." *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012) (internal quotation marks omitted). Specifically, a court must determine: (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a sufficient cause of action, and (3) whether the circumstances otherwise render the entry of default judgment "proper." *See Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 683 (D.N.J. 2015); *see also Teamsters Health & Welfare Fund of Phila. v. Dubin Paper Co.*, No. 11–7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012).

### A.  Jurisdiction and Service of Process

The Court first finds that it has subject matter jurisdiction over this action on the basis of diversity of citizenship. Federal district courts are vested with diversity jurisdiction in civil actions where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). It is well-established that "[a] natural person is deemed to be a citizen of the state where he is domiciled." *Zambelli*

4

*Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419–20 (3d Cir. 2010) (citing *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir.2008)). In order for subject matter jurisdiction to exist, there must be "complete diversity, meaning that all plaintiffs in an action must be diverse from all defendants." *Wyndham Hotel Grp. Canada, ULC v. Ostrander*, No. 21-16333, 2022 WL 16552817, at *2 (D.N.J. Oct. 31, 2022) (internal quotation marks omitted).

Here, Plaintiff is a foreign company with a principal place of business in Munich, Germany. *See* Compl. ¶ 2. The Ross Defendants are alleged to be individuals domiciled in New Jersey. *See id.* ¶ 3. By operation of law, the Defendant Administrator is deemed to be a citizen of New Jersey because the Decedent was domiciled in New Jersey prior to his death. *See* 28 U.S.C. 1332(c)(2) (stating that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent"). Thus, there exists complete diversity of citizenship between the parties in this case.

Concerning the amount in controversy, the Court is satisfied that the amount likely exceeds $75,000 because (1) the Great Lakes Policy covers personal liability up to $500,000 (ECF No. 1-2 at 2), and (2) the State Court Action demands judgment against all defendants, including the Ross Defendants, "both jointly and severally for compensatory damages and punitive damages together with attorneys' fees, interest, and costs of suit, and such other and further relief as the Court deems appropriate," (ECF No. 1-1 at 7), as well as damages for the "[D]ecedent's hospital and medical expenses, loss of earnings as well as any disability and impairment, loss of enjoyment, and pain and suffering which the [D]ecedent sustained between this accident and [his] death" (ECF No. 1-1 at 6). *See also Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (internal quotation marks omitted)).

Lastly, the Court finds that Great Lakes has properly executed service of process as to each Defendant, and that the Court thus exercises personal jurisdiction over them. "Personal jurisdiction involves valid service of process . . . over a defendant and comporting with due process requirements." *Newman v. Axiom Worldwide*, No. 06-5564, 2010 WL 2265227, at *1 (D.N.J. June 2, 2010); *see also Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *2 ("Before the Court may enter default judgment, it must find that process was properly served on the [d]efendant[s]."). Here, the Defendants—all of whom are domiciled in New Jersey—were properly served. The Affidavit of Service filed with respect to the Defendant Administrator indicates that copies of the Complaint and Summons were not only mailed to his last known address, but were also personally left with a person of suitable age at his "business, dwelling house, or usual place of abode" (ECF No. 7). *See* Fed. R. Civ. P. 4(e)(2)(B) (stating that service may be properly effectuated by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"). Concerning the Ross Defendants, Great Lakes has filed individually executed Waivers of the Service of Summons, indicating that service has been waived by counsel for both Ross Defendants (ECF No. 5, 6). *See* Fed. R. Civ. P. 4(d)(4) ("When [a] plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.").

Having determined that it is properly vested with subject matter and personal jurisdiction in this case, the Court next assesses the merits of Great Lakes' demand for declaratory judgment.

### B. Demand for Declaratory Judgment

Before a default judgment may be entered, "[t]he plaintiff's unchallenged facts set forth in the complaint must establish a legitimate cause of action." *IBEW Loc. 351 Pension Fund v. George Sparks, Inc.*, No. 14-2149, 2015 WL 778795, at *1 (D.N.J. Feb. 24, 2015). Because Great Lakes

only seeks declaratory judgment, the Court must determine whether Great Lakes is entitled to declaratory judgment under the Declaratory Judgment Act.

The Declaratory Judgment Act (the "DJA") provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Thus, "[t]he existence of a 'case or controversy' is a condition precedent to the proper exercise of judicial power by a federal court and the [DJA] cannot relax that constitutional requirement." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1153 (3d Cir. 1995). Where an actual controversy exists, the DJA "place[s] a remedial arrow in the district court's quiver and confers a unique and substantial discretion on federal courts to determine whether to declare litigants' rights." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)) (internal quotation marks omitted); *see also Lilac Dev. Grp., LLC v. Hess Corp.*, No. 15-7547, 2016 WL 3267325, at *2 (D.N.J. June 7, 2016).

Here, an actual controversy is embodied in the State Court Action. According to the complaint in that case, the Ross Defendants contracted the Decedent to perform labor on their premises. Decedent, while working within the scope of that labor, suffered severe burns and electrical injuries when an aluminum pole he was carrying came into contact with a high-voltage wire. Ultimately, the Decedent succumbed to his injuries and died. The issue thus presented in this action is whether Great Lakes has any obligation to defend or indemnify the Ross Defendants for

the claims in the State Court Action pursuant to the underlying Policy.[2] *See Canal Ins. Co. v. Fema Trucking, LLC*, No. 20-17953, 2022 WL 3227188, at *1 (D.N.J. Aug. 10, 2022) (finding actual controversy in underlying lawsuit between insured and injured party).

Having determined that an actual controversy exists, the Court next turns to the terms of the Policy. When interpreting an insurance policy under New Jersey law, courts must "first examine the plain language of the policy and, if the terms are clear, they are to be given their plain, ordinary meaning." [3] *Pizzullo v. New Jersey Mfrs. Ins. Co.*, 952 A.2d 1077, 1089 (N.J. 2008). Where an insurance policy contains exclusions to coverage, those exclusions are considered "presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy." *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (internal quotation marks omitted) (applying New Jersey law). However, ambiguous exclusions are to be "strictly construed against the insurer." *Flomerfelt v. Cardiello*, 997 A.2d 991, 997 (N.J. 2010).

Here, the Policy's Independent Contractor Exclusion contains three unambiguous exclusions for coverage, only two of which are relevant here:

1. "Bodily injury" . . . arising out of the "operations" performed for the "insured" by independent contractors or acts or omissions of the "insured" in connection with his or hers general supervision of such "operations"; [and]

2. "Bodily injury" to any independent contractor, any employee of such contractor or to any obligation of any "insured" to indemnify or contribute with another because of damages arising out of the "bodily injury[.]"

---

[2] This inquiry also informs to what extent, if any, Great Lakes would be obligated to pay the Estate Administrator insofar as the latter obtains a judgment against either of the Ross Defendants in the State Court Action.

[3] Great Lakes does not point to, and nor can the Court locate, any choice-of-law provision in the Policy. However, because the Policy was executed and performed in New Jersey, the Court will rely on and apply New Jersey law. *See Centennial Ins. Co. v. Lithotech Sales, LLC*, 29 F. App'x 835, 837 (3d Cir. 2002) ("Absent a choice of law clause in a contract . . . the governing law generally is the law of the forum where the contract is executed and performed.").

(ECF No. 1-2 at 7). "Bodily injury," as defined by the Policy, includes "bodily harm, sickness or disease, including required care, loss of services and death that results." (*Id.* at 15). "Operations," as defined by the Policy, means "*all interior or exterior renovation, rehabilitation, structural alterations of any kind, new construction, moving buildings and building demolition.*" (*Id.*)[4]

Here, the Decedent's injuries and death—both of which plainly constitute "bodily injury" within the meaning of the Policy—fall squarely within either exclusion because they occurred while he was installing siding on a construction project on the Premises, and in his capacity as an independent contractor. Therefore, the Court finds that Great Lakes has sufficiently demonstrated that it is entitled to the declaratory judgment it seeks against the Defendants. *See, e.g.*, *Canal Ins. Co.*, 2022 WL 3227188, at *5–6 (granting declaratory relief on motion for default judgment).

### C. Propriety of Default Judgment

Having determined that the entry of default is permissible, the Court now addresses whether, under the circumstances, an entry of default judgment would be appropriate. *See Teamsters Health & Welfare Fund of Phila.*, 2012 WL 3018062, at *2. Although the entry of default judgment is largely a matter of judicial discretion, such discretion is not without its limits, particularly considering the Third Circuits repeated expression of "[its] preference that cases be disposed of on the merits whenever practicable." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)) (internal quotation marks omitted). Thus, even if default judgment is permissible, the Court must weigh the following three factors to determine whether default judgment is proper: "(1) prejudice

---

[4] The Policy further states that these exclusions apply *"(1) Whether the "insured" may be liable as an employer or in any other capacity; and (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.*" (ECF No. 1-2 at 15).

to [Great Lakes] if default is denied, (2) whether the [D]efendant[s] appear[] to have a meritorious defense, and (3) whether the [D]efendant[s'] delay is due to culpable conduct." *Nautilus Ins. Co. v. Triple C Const., Inc.*, No. 10-2164, 2011 WL 42889, at *5 (D.N.J. Jan. 6, 2011) (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)).

First, the Defendants' failure to answer the Complaint has already prevented Great Lakes from seeking relief "in the normal fashion," and the Court's entry of default judgment is the only means by which Great Lakes can clarify its defense and indemnity obligations in the State Court Action. *Teamsters Pension Fund of Phil.*, 2011 WL 4729023, at *4; *see also Lancer Ins. Co. v. MJ & Sons Contractor Truck*, LLC, No. 15-7371, 2016 WL 74411, at *4 (D.N.J. Jan. 6, 2016) (finding prejudice to plaintiff where defendant's failure to respond to complaint prevented plaintiff from prosecuting its case as a matter of course).

Second, the Court notes that, because none of the Defendants have responded to the Complaint, they have presumably declined to offer any "evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *3 (D.N.J. Jan. 22, 2015). Regardless, the Court has thoroughly reviewed the record, including the Policy and its Independent Contractor Exclusion, and is unable to discern any meritorious defense to Great Lakes' demand for a declaratory judgment.

Lastly, there is no evidence in the record suggesting that Defendants are not culpable for failing to respond. Great Lakes' Affidavit of Service demonstrates that the Defendant Administrator was personally served with process. Likewise, the Ross Defendants waived service of process, demonstrating that they understood the pending action against them, as well as their obligation to file and serve an answer or motion under Fed. R. Civ. P. 12 within sixty days of

receipt. Accordingly, there is nothing before the Court "to suggest that anything other than [Defendants'] willful negligence caused [their] failure to file an answer." *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009); *see also 2109971 Ontario Inc. v. Matrix Hosp. Furniture Inc.*, No. 21-11412, 2022 WL 154411, at *4 (D.N.J. Jan. 14, 2022) ("Absent any evidence to the contrary, the Defendant's failure to answer evinces the Defendant's culpability in [the] default." (internal quotation marks omitted) (alterations in original)).

## V.    CONCLUSION

For the reasons set forth above, Great Lakes' Motion for Default Judgment is granted. A corresponding Order awarding declaratory judgment shall issue.

Dated: January 24, 2023

/s/ Karen M. Williams
KAREN M. WILLIAMS
United States District Judge

11